**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. _____**

| | |
|---|---|
| ROBERT C. BARCHIESI and LEJLA HADZIC, Individually and in a representative capacity on behalf of a class of all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARLOTTE SCHOOL OF LAW, LLC, INFILAW HOLDING, LLC, and INFILAW, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT
(Class Action)
(Jury Trial Demanded)**

NOW COME Plaintiffs Robert Barchiesi and Lejla Hadzic, individually and in their representative capacity on behalf of the class of all persons similarly situated, and files this Complaint against Defendants Charlotte School of Law, LLC, ("CSL"), InfiLaw Corporation, and InfiLaw Holding, LLC, (collectively "Defendants"). Plaintiffs make the following allegations pursuant to an investigation by their counsel and allege the following:

## I. NATURE OF THE ACTION

1.      This is a putative class action against Defendants for false and misleading representations and omissions related to Defendants' failure to provide current and prospective CSL students with information about CSL's noncompliance with American Bar Association ("ABA") standards for accreditation. If CLS had complied with its obligations, then it would have resulted in students not paying CSL tuition on or after August 1, 2016, and Defendants would have incurred substantial financial losses.

1

## II. PARTIES AND JURISDICTION

2.      Class representative Robert C. Barchiesi asserts individual and representative claims.  Barchiesi is an adult resident of the State of North Carolina.

3.      Class representative Lejla Hadzic asserts individual and representative claims.  Hadzic is an adult resident of the State of North Carolina.

4.      Charlotte School of Law is a Limited Liability Company incorporated in Delaware and licensed to operate in the State of North Carolina.  CSL is engaged in the business of for-profit legal education in the State of North Carolina.  CSL's principal office address is 201 S. College Street, Suite 400, Charlotte, NC 28244-0048.  CSL's registered agent for service is Corporation Service Company, located at 327 Hillsborough Street, Raleigh, NC 27603-1725.

5.      InfiLaw Corporation is a foreign corporation engaged in the business of higher education management in several states, including North Carolina.  InfiLaw Corporation is incorporated in Delaware with a principal place of business in Naples, Florida.  InfiLaw Corporation's principal office is located at 8625 Tamiami Trail N., Suite 500, Naples, Florida 34108-2890.  InfiLaw Corporation maintains substantial control and/or ownership over CSL.  InfiLaw Corporation is a corporation licensed to do business in the State of North Carolina, and at all times relevant to this complaint maintained substantial contacts with the State of North Carolina.  InfiLaw Corporation may be served via its registered agent for service in North Carolina, Corporation Service Company, located at 327 Hillsborough Street, Raleigh, NC 27603-1725.

6.      InfiLaw Holding, LLC, is a corporate holding company who, upon information and belief, wholly owns InfiLaw Corporation and CSL.  InfiLaw Holding, LLC, is a Delaware limited liability company, with a principal place of business, upon information and belief, of 1100 5th Avenue South, Naples, FL 34102.  InfiLaw Holding, LLC, may be served via its registered agent,

Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, costs, and fees and at least one class member is a citizen of a state different from any Defendant.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of these events or omissions giving rise to Plaintiffs' claims occurred in this District and Defendants do business in this District and CSL is in this District.

## III. <u>FACTUAL ALLEGATIONS</u>

### A. Background

9.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of the Complaint as if fully set forth herein.

10.     CSL was founded in 2004 and is a member of The InfiLaw System.  InfiLaw is a consortium of three privately owned for-profit law schools: CSL, Arizona Summit Law School, and Florida Coastal School of Law.

11.     Each of the three InfiLaw schools, including CSL and InfiLaw Corporation itself, is owned by InfiLaw Holding, LLC.  Upon information and belief, Sterling Capital Partners, L.P., a private equity firm headquartered in Chicago, IL, maintains a majority ownership stake in InfiLaw Holding, LLC.

12.     Pursuant to Title 34, Chapter VI, § 602 of the Code of Federal Regulations, the Council of the Section of Legal Education and Admissions to the Bar ("the Council") and the Accreditation Committee of the Council ("Committee") of the American Bar Association

3

(collectively, the "ABA") are recognized by the United States Department of Education ("DOE") as the accrediting agency for programs awarding a Juris Doctorate.

13.    The Council promulgates the Standards and Rules of Procedure for Approval of Law Schools ("Standards").  Law Schools must comply with these Standards in order to obtain accreditation and remain in good standing with the ABA.

14.    In February 2009, under the guidance and control of InfiLaw Corporation, CSL executed a provisional Program Participation Agreement ("PPA"), which allowed CSL to participate in the student financial assistance programs authorized by Title IV of the Higher Education Act of 1965.  By doing so, CSL students were eligible for federal student loans to pay for a portion, or all, of the cost of attending CSL.

15.    The DOE is responsible for evaluating an educational institution's eligibility for continued access to Title IV programs.  CSL's most recent PPA expired in June 2015, and CSL timely submitted an application for recertification with the DOE.  CSL was granted a month-to-month extension while the DOE evaluated their application, allowing CSL students continued access to federal student loans.

16.    By correspondence dated December 19, 2016, CSL was provided notice that the DOE had denied CSL's application for continued participation in Title IV programs.  This correspondence, entitled Denial of Recertification Application to Participate in the Federal Student Financial Assistance Program ("Denial Letter"), informed CSL that CSL's participation in in Title IV programs would conclude on December 31, 2016.

17.    Due to the DOE's denial of their application, CSL students will no longer be eligible for federal student loans, including: Federal Work-Study, Federal Perkins Loans, and

4

Federal Direct Loan programs, which include the Federal Direct Unsubsidized Stafford/Ford Loan program and the Federal Direct PLUS Program.

18.    According to their denial, the DOE's decision was based in part on information obtained by the ABA and the ABA's actions as described below.

### B. ABA Review

19.    CSL was granted provisional accreditation by the ABA in 2008, and the ABA granted CSL full accreditation in 2011.

20.    In March 2014, an ABA "site team" visited CSL to conduct a Three-Year Interval evaluation of the school.   According to the DOE's Denial of Recertification Application to Participate in the Federal Student Financial Assistance Program, the site team "met with Rick Inatome (CEO of InfiLaw Holding, LLC), Jay Conison (Dean of CSL), Don Lively (then-President of CSL), numerous CSL administrators, members of the institution's accreditation self-study Committee, CSL faculty, CSL staff, and CSL students.   Members of the site team also visited a significant majority of the classes taught during the visit."

21.    On September 15, 2014, CSL was provided with the ABA's Inspection Report. CSL was informed by the ABA that the Inspection Report would function as the basis for determining whether CSL was operating in compliance with ABA Standards.   CSL responded to the Inspection Report in October 2014.

22.    Following the Committee's January 2015 meeting, during which both the Inspection Report and CSL's response were reviewed, the Committee issued a decision ("first decision") stating there was "reason to believe" that CSL had "not demonstrated compliance" with multiple ABA Standards.   The Committee requested additional information to assess CSL's

possible noncompliance with several ABA Standards, including Standards 301(a), 501(a), 501(b), and Interpretation 501-1.

    a. Standard 301(a) mandates that a "law school shall maintain a rigorous program of legal education that prepares its students, upon graduation, for admission to the bar and for effective, ethical, and responsible participation as members of the legal profession.

    b. Standard 501(a) requires a law school to "maintain sound admission policies and practices consistent with the Standards, its mission, and the objectives of its program of legal education."

    c. Standard 501(b) instructs that a "law school shall not admit an applicant who does not appear capable of satisfactorily completing its program of legal education and being admitted to the bar."

    d. Interpretation 501-1 states: "Among the factors to consider in assessing compliance with this Standard are the academic and admission test credentials of the law school's entering students, the academic attrition rate of the law school's students, the bar passage rate of its graduates, and the effectiveness of the law school's academic support program."

23. According to the DOE, the above-referenced Standards "are foundational to the educational enterprise and the nature of the educational program offered by CSL."

24. As requested by the Committee, CSL provided additional information in December 2015.

25. The Committee issued a decision on February 3, 2016, ("second decision"), in which the Committee determined that CSL was "**not in compliance**" with Standards 301(a), 501(a), 501(b), and Interpretation 501-1. Specifically, the Committee found that:

> [CSL] has not demonstrated that it is maintaining a rigorous program of legal education that prepares its students, upon graduation, for admission to the bar and for effective, ethical, and responsible participation as members of the legal profession; maintaining sound admissions policies and practices consistent with the Standards, its mission, and the objectives of its program of legal education; or is admitting applicants who do not appear capable of satisfactorily completing its program of legal education and being admitted to the bar. (Second Committee Decision at 6, citing Findings of Fact 8-20)

6

26.     In its second decision, the Committee also requested additional information relevant to showing compliance with Standards 301(a), 501(a), 501(b).  The Committee also requested information regarding CSL's enrolled students, beginning with the fall 2010 entering class, through the spring 2016 entering class.

27.     As part of its second decision, the Committee notified CSL of a hearing in June 2016 "to determine whether to impose sanctions in connection with [CSL's] noncompliance with the Standards."  The Committee requested that the President and the Dean of CSL appear before the Committee at the June 2016 hearing.  (Second Committee Decision at 7)

28.     In May 2016, CSL responded to the Committee's decision and request, which CSL claimed showed compliance with Standards 301(a), 501(a), 501(b), and Interpretation 501-1.

29.     A hearing was held by the Committee on June 23, 2016.  Dean Jay Conison appeared, along with multiple other CSL employees.

30.     In July 2016, the Committee issued its last decision ("third decision"), again finding that CSL was **out of compliance** with Standards 301(a), 501(a), 501(b), and Interpretation 501-1. Additionally, the Committee described CSL's noncompliance as "**substantial**" and "**persistent**." (Third Committee Decision at 12).  The Committee held that CSL's plans for bringing CSL into compliance with these Standards "have not proven effective or reliable."

31.     The third decision instructed CSL to make remedial actions, including submitting a plan to come into compliance with the Standards by September 1, 2016.  CSL was further directed to supply additional information to the Committee, **to disclose the Committee's decision to its students and the public**, and to appoint a fact finder to review multiple issues, including CSL's admissions policies, academic rigor, bar examination results, student loan default rates, and graduate employment outcomes.

7

32.     Upon information and belief, CSL did not disclose the Committee's third decision to its students, to potential students, or to the public.

33.     CSL appealed portions of the third decision to the Council in August 2016.  CSL did not appeal the Committee's conclusion that CSL was not in compliance with Standards 301 and 501.

34.     A Council hearing was held in October 2016 on CSL's appeal from the Committee's third decision. Dean Conison, appearing on CSL's behalf, requested that the Council eliminate the requirement that CSL publicly disclose the Committee's findings of noncompliance.

35.     On November 14, 2016, the Council issued a decision entitled Notice of Probation and Specific Remedial Action, concluding that CSL was not in compliance with Standards 301(a), 501(a), 501(b), that the noncompliance issues were "substantial and have been persistent," and that CSL's plan to bring CSL into compliance "have not proven effective or reliable."  (ABA Notice)

36.     CSL was placed on probation by the ABA, effective November 14, 2016, and was ordered for a second time to inform its students that CSL had been placed on probation and of the specific remedial actions the school was required to take, which CSL had not done previously. CSL was further ordered to publish information regarding its probationary status "prominently on its website in a place and manner acceptable to the Managing Director."  (ABA Notice)

### C. Defendants' Misrepresentations and Concealment

37.     The ABA's Notice of Probation was the third time in 2016 that CSL was notified by the ABA that they were not in compliance with Standards 301(a), 501(a), 501(b).

38.     CSL has been determined noncompliant with ABA Standards 301(a), 501(a), 501(b), and Interpretation 501-1 since February 2016.  Despite the fact that CSL was ordered by the ABA to disclose that information to its students and to the public in July 2016, upon

information and belief, CSL did not disclose this information to its students, potential students, or the public until November 2016.

39.     On or about November 16, 2016, after being ordered for a **second time** to disclose information regarding CSL's noncompliance with ABV standards 301(a), 501(a), 501(b), CSL sent an email to its students, with a link to a letter dated November 15, 2016.  Students were informed in that email that "[t]he document will only be available for review for a limited time," and were requested to "not forward the information or request to distribute it."

40.     In the November 15, 2016, correspondence, CSL described the ABA's initial report as "largely positive," and informed students that "the Accreditation Committee issued a letter to us that also was mainly positive, but noted a few areas that could be strengthened."  CSL cited a number of alleged "improvements" in CSL's bar preparation, admissions, academic support, and "much more."  CSL then informed its students:

> Despite these many improvements, the ABA has asked us to undertake specific actions as follows: submit a Reliable Plan for bringing us into compliance with the relevant standards; work with a Fact Finder who will visit the School next semester and gather further information; and provide information to students regarding bar outcomes.  We are in a probationary period as we undertake these actions and will continue to report to the ABA and the CharlotteLaw community on our improvements and their results. We have already developed a thorough Reliable Plan for the ABA, which will guide our work going forward.  We are very confident that through this Plan we can quickly move out of this probationary period.  Please note that CharlotteLaw remains an approved ABA law school; that CharlotteLaw students can sit for any state bar exam; and that current and future students can apply for and receive federal financial aid.

41.     The November 15, 2016, letter concluded by describing CSL's Plan as "a strong plan, robustly backed by data and experience, and entirely consistent with our mission.  We are proud of what we have accomplished and are confident in our continued successes going forward."

9

42. Upon information and belief, CSL did not inform enrolled students or potential students of the fact that CSL had been found out of compliance with the above-referenced standards prior to the fall 2016 semester, beginning in August 2016.

43. Upon information and belief, CSL has admitted, and alleged in correspondence with the ABA, that if students and prospective students were made aware of CSL's noncompliance, it would have a negative impact on CSL's admissions. (Oct. 4 Letter from Conison to ABA)

44. Upon information and belief, CSL did not inform enrolled students or potential students of the fact that the ABA had concluded that CSL had "not demonstrated that it is maintaining a rigorous program of legal education that prepares its students, upon graduation, for admission to the bar and for effective, ethical, and responsible participation as members of the legal profession" until November 2016. (Second Decision, Third Decision, Council Decision)

45. Upon information and belief, CSL did not inform enrolled students or potential students of the fact that the ABA had concluded that CSL was "admitting applicants who [did] not appear capable of satisfactorily completing its program of legal education and being admitted to the bar" until November 2016. (Second Decision, Third Decision, Council Decision)

46. To the contrary, beginning as late as February 2016, CSL has made statements to its students, prospective students, and the public which constitute misrepresentations regarding CSL's compliance with ABA Standards, the nature of its educational program, and its admissions practices.

47. Upon information and belief, CSL has promoted and maintained on its website, during all relevant periods, that CSL was fully accredited by the ABA, and that CSL has been found to be in full compliance with ABA Standards.

48.     As of December 21, 2016, CSL continued to promote and maintain on its website that "The Charlotte School of Law has been awarded full accreditation by the American Bar Association," and that the Council has "determined through its accreditation process that Charlotte School of Law is in full compliance with the ABA Standards for Approval of Law Schools." (CSL website, FAQs, emphasis added)

49.     In another section of CSL's website, under the heading "Our Mission," CSL continues to represent that "the Council has "determined through its accreditation process that Charlotte School of Law is in full compliance with the ABA Standards for Approval of Law Schools." In this section, CSL adds that the "ABA Accreditation Committee gave Charlotte School of Law a positive recommendation to the Council in May 2011. The ABA granted provisional approval to the School in 2008, concluding it was in compliance with ABA standards and had a plan to bring itself into full compliance. A law school must be provisionally approved for at least two years before it is eligible to apply for full approval. In order to be granted full approval, a School must demonstrate that it has established full compliance with each of the ABA's standards, including standards relating to bar passage, job placement and diversity. The ABA's Chicago Headquarters is located at 321 North Clark Street, Chicago, IL, 60654." (CSL website, Our Mission)

50.     Under the "Our Mission" heading, during all relevant periods, CSL has represented that "[a] rigorous curriculum has been created to ensure that our students are equipped with practical skills that will allow them to thrive in a professional setting." This statement has remained published on CSL's website, despite the ABA's July 2016 decision that CSL was not in compliance with ABA Standard 301, and despite the fact that CSL did not appeal that decision as part of its August 2016 appeal from the Committee's third decision.

11

51. Following the Council's decision to place CSL on probation, the President of CSL, Chidi Ogene, falsely claimed: "[i]f you look at bar pass rates between 2009 and 2013, we were consistently *at or above* the state bar average pass rate." In fact, during that period, CSL's bar passage rate was *below* the state average a majority of the time. This false statement was made to the Charlotte Business Journal, and Defendants knew or should have known that the statement would be made public and could be viewed by current and prospective students.

### D. Individual Factual Allegations

52. Plaintiff Barchiesi initially enrolled at CSL in the summer of 2015, as part of CSL's "jump start program." Prior to enrolling at CSL, Barchiesi worked as a police officer, but decided to attend CSL out of a desire to work as a public defender.

53. Barchiesi knew that CSL was a for-profit institution at the time he enrolled. However, Barchiesi was assured by public information disseminated by CSL, that CSL was fully accredited and in complete compliance with ABA standards.

54. Barchiesi thoroughly reviewed CSL's website and other published information prior to making the decision to attend CSL, and relied upon the accuracy of that information in making his decision to attend CSL.

55. While attending CSL, Barchiesi grew concerned by CSL's admissions practices, and the academic abilities of some of the students who had matriculated there.

56. Due to Barchiesi's increasing apprehension, he considered applying to other law schools prior to the fall 2016 semester. Based on multiple considerations, including Defendants' continued representations regarding CSL's accreditation and compliance with ABA Standards, he elected to remain enrolled at CSL.

57.     If CSL had notified its students, including Barchiesi, that CSL had been determined by the Committee to be noncompliant with multiple ABA Standards, Barchiesi would not have attended CSL during the fall 2016 semester, and Defendants would not have collected tuition and fees from Barchiesi.

58.     Plaintiff Hadzic initially enrolled at CSL in the fall of 2015.  Prior to attending CSL, Hadzic received her undergraduate degree from Gannon University in Erie, Pennsylvania.

59.     Hadzic was aware that CSL was a for-profit institution at the time she enrolled. However, Hadzic chose to enroll at CSL based in large part based on CSL's statements regarding CSL's accreditation status and compliance with ABA Standards.

60.     Hadzic thoroughly reviewed CSL's website and other published information prior to making the decision to attend CSL, and relied upon the accuracy of that information in making her decision to attend CSL.

61.     In making her decision to stay at CSL after her first year of law school, Hadzic relied on CSL's representations regarding CSL's full compliance with ABA Standards and CSL's accreditation.

62.     If CSL had notified its students, including Hadzic, that CSL had been determined by the Committee to be noncompliant with multiple ABA Standards, Hadzic would not have attended CSL during the fall 2016 semester.

63.     Without warning, Barchiesi and Hadzic first learned of CSL's noncompliance in November 2016, after the Council had upheld the Committee's findings, and after CSL had been placed on probation by the ABA.

64.     According to CSL's Refund Policy, Barchiesi and Hadzic were not able to collect a refund of the tuition and fees paid to CSL for the fall 2016 semester, beginning in August 2016.

13

# IV. CLASS ACTION ALLEGATIONS

65.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The Plaintiff class should consist of any CSL student who paid tuition and/or fees to Defendants to attend CSL at any time on or after August 1, 2016, whether through federal loans or otherwise.  The Class is so numerous that joinder of all class members is impracticable.

66.    Excluded from the proposed class are Defendants, any entity as to which Defendants have a controlling interest, and any agents, employees, officers and/or directors of Defendants and their representatives, heirs, successors and/or assigns.

67.    Numerosity: The class is so numerous that individual joinder of all class members as parties to this action would be impractical. While the exact number and identities of class members are unknown at this time, and can be ascertained only through appropriate discovery, Plaintiff alleges that the class consists of hundreds of members at the least.

68.    Ascertainability:  The proposed class definition is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a class member. Identifying class members is a manageable process that does not require any individual factual inquiry, as class members can be ascertained by reference to objective criteria, such as records in the possession of class members and the Defendants.

69.    Existence and predominance of common questions of law and fact: Questions of law and fact of common and general interest to the class exist as to all class members and predominate over any questions affecting only individual members of the class. Said common questions include, but are not limited to, the following:

        a.    Whether Defendants engaged in unfair or deceptive trade practices or acts through misrepresentations to current students, prospective students, and or the public;

14

> b. Whether Defendants were unjustly enriched at the expense of Plaintiff Class members by virtue of Defendants' practices;
>
> c. Whether Defendants breached a fiduciary duty owed to members of the Plaintiff Class;
>
> d. Whether Defendants' actions amount to a constructive fraud upon members of the Plaintiff Class.

70. Typicality: The named plaintiffs' claims are typical of class members' claims, as all such claims arise out of the payment of tuition and/or fees to Defendants' as a result of misrepresentations and the concealment of material information by Defendants. Plaintiffs and all members of the class have suffered a common injury arising out of Defendants' common course of conduct.

71. Adequate representation: Plaintiffs' counsel will fairly and adequately protect the interests of the Plaintiff Class and will vigorously prosecute the claims of the Plaintiff Class. Plaintiffs' counsel are experienced in handling class claims and have the resources, time, and ability to pursue claims on behalf of the Plaintiff Class. The named Plaintiffs will adequately represent the interests of the Plaintiff Class.

72. Superiority: A class action is superior to other available methods for a fair and efficient adjudication of this controversy because individual joinder of all members of the class is impractical. Further, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to obtain relief. The interests of judicial economy favor adjudicating the claims of the Plaintiff Class on a class basis rather than an individual basis.

73. Neither the named Plaintiffs nor Plaintiffs' counsel have any interest that would cause them not to pursue this case vigorously.

74. Risk of inconsistent or varying adjudications: Class action treatment is proper, and this action should be maintained as a class action because the maintenance of separate actions by

15

individual members of the class would create a risk of: (a) inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendants, as the party opposing the class; and/or (b) adjudications with respect to individual class members would, as a practical matter, be dispositive of claims of other class members not parties to the adjudication or would substantially impair or impede their ability to protect their interests.  In addition, Defendants, as the party opposing the class, have acted or refused to act on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.

## V. REPRESENTATIVE CLAIMS

## COUNT 1: Violation of N.C. Gen. Stat. § 75-1.1

75.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of the Complaint as if fully set forth herein.

76.     N.C. Gen. Stat. § 75-1.1 makes unlawful "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

77.     The misrepresentations made by Defendants constitute a violation of G.S. § 75-1.1 in that such actions were against the established public policy of the State of North Carolina, were in or affecting commerce in North Carolina, and were unfair, misleading, deceptive, unethical, oppressive, unscrupulous, and/or substantially injurious to the students who enrolled, or re-enrolled, in CSL for the fall 2016 semester.

78.     The misrepresentations made by Defendants had the capacity and tendency to deceive the prospective and current students into believing that CSL was in compliance with multiple ABA Standards, when Defendants knew that CSL was not in compliance.  These material misrepresentations were contrary to the principles and obligations of good faith and fair dealing

16

which Plaintiffs and the Plaintiff Class were owed and had a right to expect. Defendants' misrepresentations were unfair, deceptive, unethical, and substantially injurious to Plaintiffs and the Plaintiff Class.

79.     The actions and misrepresentations alleged above were committed and made willfully by Defendants, and made out of a desire to profit from tuition and fees of current and prospective students.

80.     Defendants made affirmative material misrepresentations with the intent that Plaintiffs and the Plaintiff Class would rely upon Defendants' material misrepresentations and failures to disclose the true nature of their noncompliance with various ABA Standards.

81.     Defendants' material misrepresentations possessed the tendency and/or capacity to deceive and mislead or create the likelihood of deception to Plaintiffs and the Plaintiff Class.

82.     Defendants profited substantially from tuition and fees paid by Plaintiffs and the Plaintiff Class for the fall semester of 2016.

83.     As a direct and proximate result of these unfair and deceptive misrepresentations, Plaintiff and the Plaintiff Class have been damaged and are entitled to recover treble damages as well as attorneys' fees and costs, pursuant to N.C. Gen. Stat. § 75-16.

## COUNT 2: Unjust Enrichment

84.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of the Complaint as if fully set forth herein.

85.     Defendants were unjustly enriched as a direct result of the misrepresentations made to Plaintiffs and their concealments. Upon information and belief, Defendants admitted to the ABA that informing current and prospective students of their noncompliance with the ABA

Standards identified herein would have negative consequences on CSL's ability to enroll students, thereby damaging Defendants' profits.

86.     As a direct result of Defendants' material misrepresentations, Defendants realized a financial benefit by preventing current and enrolling students the opportunity to make an informed decision prior to enrolling at CSL for the fall semester of 2016, and by collecting tuition and fees from Plaintiffs and the Plaintiff Class.

87.     It would be inequitable and unjust for Defendants to retain such ill-gotten gains, which Defendants have received as a result of their misconduct and material misrepresentations and concealments.  The unjust enrichment of Defendants has caused economic damage to Plaintiffs and the Plaintiff Class.

88.     Defendants are liable for the return of tuition and fees paid by Plaintiffs for at least the fall semester of 2016.

89.     Plaintiffs and the Plaintiff Class are entitled to money damages from Defendants on account of Defendants' unjust enrichment through unscrupulous and unfair practices.

## COUNT 3: Breach of Fiduciary Duty

90.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of the Complaint as if fully set forth herein.

91.     Upon information and belief, by entering into its Program Participation Agreement, and recouping the advantages of becoming a participating institution in the Title IV programs, CSL and its officers and employees agreed to comply with all conditions requirements of Title IV of the Higher Education Act of 1965.

18

92.     Upon information and belief, by entering into its PPA, CSL and its officers and employees also accepted and agreed to accept fiduciary responsibility in the administration of Title IV programs.

93.     At all relevant times, a fiduciary relationship existed between CSL and CSL's officers and employees and both current and perspective students.

94.     As a fiduciary, CSL and CSL's officers were responsible for acting with the highest standard of care and diligence related to administration of Title IV programs. This fiduciary responsibility included the prohibition against substantial misrepresentations by CSL and CSL's officers and employees.

95.     Defendants' material misrepresentations outlined herein constituted substantial misrepresentations within the meaning of DOE's regulations.

96.     Pursuant to 34 C.F.R. § 668.71(c), a "substantial misrepresentation" is defined as "any misrepresentation on which the person to whom it was made could reasonably be expected to rely, or has reasonably relied, to that person's detriment."

97.     Pursuant to 34 C.F.R. § 668.71(b), and according to the DOE, "substantial misrepresentations include misrepresentations made by the institution itself, or one of its representatives, regarding the nature of the institution's academic programs or the employability of its graduates." (DOE Denial)

98.     Pursuant to 34 C.F.R. § 668.71(a) and (g), and according to the DOE, "substantial misrepresentations involving the nature of an institution's education program include misrepresentations concerning the 'nature and extent' of the institution's accreditation and the 'availability, frequency, and appropriateness of its courses and programs to the employment objectives that it states its programs are designed to meet.'"

19

99.     Defendants misrepresented to current and prospective students the nature and extent of CSL's accreditation.

100.    Defendants misrepresented to current and prospective students the appropriateness of its courses and programs to the employment objectives that it states its programs are designed to meet.

101.    Defendants' misrepresentations outlined herein constituted a breach of the fiduciary duty owed by Defendants to CSL's current and prospective students.

102.    Plaintiffs and the Plaintiff Class reasonably relied on the substantial misrepresentations made by Defendants outlined herein, and that reliance proximately caused Plaintiffs and the Plaintiff Class substantial pecuniary damages.

## COUNT 4: Constructive Fraud

103.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of the Complaint as if fully set forth herein.

104.    Defendants maintained a relationship of trust and confidence with Plaintiffs and the Plaintiff Class.

105.    Defendants took advantage of their position of trust, and made substantial misrepresentations to current and prospective students, in order to realize financial benefit from the tuition and fees paid by current and prospective students.

106.    Due to Defendants' position of trust, Plaintiffs and the Plaintiff Class relied on Defendants misrepresentations to Plaintiffs' and the Plaintiff Class' detriment.

107.    As a direct and proximate result of Defendants' actions and misrepresentations, Plaintiffs and the Plaintiff Class suffered substantial pecuniary damages.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiffs Robert Barchiesi and Lejla Hadzic, individually, and in their representative capacity, respectfully requests the following:

1.      That Plaintiff have and recover compensatory and punitive damages in such amount as proof at trial may show under their individual counts for relief set forth in this Complaint;

2.      That the Court treble all compensatory damages and award attorneys' fees pursuant to N.C. Gen. Stat. § 75-1.1 and N.C. Gen. Stat. Chapter 75D;

3.      That the Court certify this case as a class action with respect to the claims asserted in Claims 1 through 4 pursuant to Rule 23 of the Federal Rules of Civil Procedure and award the class equitable relief, including declaratory relief, compensatory and punitive damages in such amount as proof at trial may show; and

4.      That the Court award such other additional relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury in the above cause as to all claims triable by jury.

This the 22nd day of December, 2016.

MARTIN & JONES, PLLC


BY:   /s/ H. Forest Horne
  John Alan Jones, NCSB #10376
  jaj@m-j.com
  H. Forest Horne, NCSB #16678
  hfh@m-j.com
  Karl J. Amelchenko, NCSB #43387
  kja@m-j.com
  Steven D. Corriveau, NCSB #45952
  sdc@m-j.com
  410 Glenwood Avenue, Suite 200
  Raleigh, NC 27603
  (919) 821-0005

SHIPMAN & WRIGHT, LLP


BY:   /s/ Gary K. Shipman
  Gary K. Shipman, NCSB #9464
  Kyle J. Nutt, NCSB #43469
  Shipman & Wright, LLP
  575 Military Cutoff Road, Suite 106
  Wilmington, NC 28405
  (910) 762-1990
  gshipman@shipmanlaw.com

  **ATTORNEYS FOR PLAINTIFF**