**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:16-CV-00861-GCM**

| | |
|---|---|
| ROBERT C. BARCHIESI, and LEJLA HADZIC, Individually and in a representative capacity on behalf of a class of all persons similarly situated, | ) |
| Plaintiffs, | ) |
| vs. | ) |
| CHARLOTTE SCHOOL OF LAW, LLC and INFILAW CORPORATION, | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS**

## INTRODUCTION

The Settling Plaintiffs and Defendants[1] (together, the "Settling Parties") seek (a) preliminary approval of the Class Action Settlement Agreement; and (b) preliminary certification of a mandatory settlement class under Federal Rules of Civil Procedure 23(a) and 23(b)(1)(B). As set forth below, this action and proposed settlement fully meet the requirements of Rule 23 of the Federal Rules of Civil Procedure.

The Settling Parties have conducted extensive negotiations, engaged in substantial pre-settlement discovery, and, after careful consideration, have determined that the interests of Plaintiffs, the class they propose to represent, and Defendants are best served by the proposed settlement. From the Settling Plaintiffs' perspective, given that the principal Defendant, CSL, has closed due to financial difficulties and that the insurance proceeds have been depleted as a result of litigation, the Settling Plaintiffs have concluded that a prompt "limited fund" settlement pursuant to Rule 23(b)(1)(B) allows for the maximum distribution to the class. From Defendants' perspective, without a limited fund settlement, prolonged litigation would quickly deplete the remaining insurance proceeds without resolving the litigation. For these reasons, and others set forth below, the Settling Parties jointly request that this Court preliminarily approve the settlement and preliminarily certify the proposed settlement class pursuant to Rule 23(b)(1)(B).

[1] The "Settling Plaintiffs" are: (i) the proposed class representatives in *Krebs v. Charlotte School of Law* and *Levy v. Charlotte School of Law*, *i.e.*, Spencer Krebs, Morgan Switzer, Dave Wyatt, Krystal Horsley, Jacenta Marie Price, Markisha Dobson, Raissa Levy, James Villanueva, Shanna Rivera, and Andre McCoy, individually and in their representative capacity on behalf of all others similarly situated; and (ii) Leah Ash, individually. "Defendants" are Charlotte School of Law, LLC ("CSL"), InfiLaw Corporation, Chidi Ogene, Jay Conison, Don Lively, and InfiLaw Holding, LLC ("Holding"). Capitalized terms, unless otherwise defined, have the same definitions as those terms in the Settlement Agreement (submitted as Ex. 1).

## STATEMENT OF THE CASE

### A. The Consolidated Actions.

On December 22, 2016, Settling Plaintiffs Spencer Krebs, Morgan Switzer, Dave Wyatt, Krystal Horsley, Jacenta Marie Price, and Markisha Dobson commenced a putative class action entitled *Krebs v. CSL, et al.*, Case No. 1:16-cv-01437-CCE-JEP (M.D.N.C.) ("*Krebs*"). On January 19, 2017, Settling Plaintiffs Raissa Levy, James Villanueva, Shanna Rivera, and Andre McCoy commenced a putative class action entitled *Levy v. CSL, et al.*, Case No. 3:17-CV-00026-GCM (W.D.N.C.) ("*Levy*"). Also on December 22, 2016, plaintiffs Robert Barchiesi and Lejla Hadzic filed another putative class action, *Barchiesi et al. v. CSL, et al.*, Case No. 3:16-CV-00861-GCM (W.D.N.C.) ("*Barchiesi*"). On April 10, 2017, *Krebs* was transferred pursuant to 28 U.S.C. § 1404(a) to this Court (Case No. 3:17-CV-00190-GCM). The Court consolidated *Krebs*, *Levy*, and *Barchiesi* for purposes of discovery on October 13, 2017. *Barchiesi*, DE 61.

On December 28, 2016, Settling Plaintiff Leah Ash filed an individual claim entitled *Ash v. CSL, et al.*, Case No. 16-CVS-22993 ("*Ash*") in Superior Court for Mecklenburg County, North Carolina. On January 27, 2017, Defendants removed *Ash* to this Court (Case No. 3:17-CV-00039-GCM) and on February 27, 2017, plaintiff moved to remand to state court. On November 14, 2017, this Court denied plaintiff's motion to remand and consolidated *Ash* for purposes of discovery with *Barchiesi*, *Krebs*, and *Levy*. *Ash*, DE 20. Ash and the named plaintiffs in *Barchiesi*, *Krebs*, and *Levy* are collectively referred to as "Plaintiffs," and, together with the Defendants, are the "Parties." The *Barchiesi*, *Krebs*, *Levy*, and *Ash* cases are, collectively, referred to herein as the "Consolidated Actions."

**B. State Court Actions.**

On January 31, 2017, certain individuals began filing cases alleging claims similar to those asserted in the Consolidated Actions against certain Defendants in North Carolina Superior Court ("State Court"). *See, e.g.*, *Herrera v. CSL, et al.*, Case No. 17-CVS-1965. On June 21, 2017, the State Court consolidated five state cases under *Herrera* and stayed all other similarly filed cases until the State Court had ruled on the motions to dismiss. *Herrera*, DE 38. More than 90 individual state actions ("State Actions") with over 160 plaintiffs ("State Plaintiffs") are pending.

**C. Litigation Activity.**

Defendants filed motions to dismiss the Consolidated Actions (before their consolidation) and *Herrera*. But for *Ash*,[2] the courts granted in part and denied in part those motions, the end resulting being that only three claims survived: alleged violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"); fraud; and negligent misrepresentation. *Barchiesi*, DE 41; *Levy*, DE 62; *Krebs*, DE 92; *Herrera*, DE 272.[3]

In *Krebs*, Defendants moved to dismiss Holding and Lively for lack of personal jurisdiction. *Krebs*, DE 61. The *Krebs* Plaintiffs took jurisdictional discovery (*id.*, DE 87), including 58 interrogatories, 87 document requests, 71 requests for admission, and two depositions. *See id.*, DE 94, p. 2. This Court granted that motion and dismissed Holding and Lively for lack of personal jurisdiction on November 13, 2017. *Id.*, DE 115.[4]

---

[2] This Court denied the *Ash* motion to dismiss because the Consolidated Complaint rendered it moot. *Ash*, DE 25.

[3] The State Court ordered State Plaintiffs in the consolidated *Herrera* cases to amend their fraud claims to comply with Rule 9(b). *See Herrera*, DE 272, p. 30. These State Plaintiffs have not yet filed an amended complaint complying with this Order.

[4] The defined term "Defendants" includes Holding and Don Lively because the dismissal does "not end the action" as to them until judgment is entered. Fed. R. Civ. P. 54(b).

On January 26, 2018, as required by this Court's order, Plaintiffs in *Krebs*, *Levy*, *Ash*, and *Barchiesi* filed a consolidated complaint ("Consolidated Complaint" or "Complaint"). *Barchiesi*, DE 78. The Consolidated Complaint asserted three remaining claims: (1) violation of UDTPA; (2) fraud; and (3) negligent misrepresentation. *See* Compl. ¶¶ 204-254.

On February 9, 2018, Defendants moved to dismiss Ash's individual claims and Defendants Ogene and Conison. *Barchiesi*, DE 82, 83. This Court has not ruled on these motions. Also on February 9, 2018, Defendants CSL and InfiLaw Corporation answered the Consolidated Complaint denying the allegations and asserting affirmative defenses. *Id.*, DE 84, 85.

As more fully described below, after an intensive, contentious two-day mediation with a highly regarded professional mediator, the Parties reached a settlement Memorandum of Understanding ("MOU") on April 20, 2018, and this Court and the State Court subsequently stayed the Consolidated Actions. *See Barchiesi*, DE 95, 96, 97; *Herrera*, DE 273, 274, 275.

## NATURE OF CLAIMS AND DEFENSES

The Consolidated Complaint centers around the allegation (which Defendants deny) that Defendants misrepresented and failed to inform students and prospective students about CSL's compliance with ABA standards ("ABA Standards") and the status of its ABA accreditation once the ABA had placed it on probation. Compl. ¶¶ 68-75. In connection with the alleged failure to comply with ABA Standards, the Consolidated Complaint focuses on three specific Standards.

*First*, the Consolidated Complaint alleges that Defendants misrepresented that CSL had created a "rigorous curriculum," and that it had failed to do so as required by ABA Standard 301(a). *See* Compl. ¶¶ 227, 350. In response, Defendants assert, among other things, that CSL did have a rigorous curriculum, but, in any event, any allegations that the education it provided was not good enough constitutes educational malpractice, a claim that North Carolina does not recognize.

*Second*, the Consolidated Complaint alleges that CSL failed to maintain "sound admission policies and practices consistent with the Standards, its mission, and the objectives of its program of legal education," in compliance with ABA Standard 501(a), and that it misrepresented to students that it did maintain such policies. *See* Compl. ¶¶ 206-10, 291, 338. Defendants dispute this allegation, but in any event contend, among other things, that complaints that CSL's criteria for selecting students were deficient constitutes non-actionable educational malpractice.

*Third*, the Consolidated Complaint asserts that CSL enrolled "high-risk students" who did not appear capable of satisfactorily completing its program of legal education and being admitted to the bar, in violation of ABA Standard 501(b). Compl. ¶¶ 1, 77-78. Defendants likewise dispute this allegation, but in any event assert, among other things, that information regarding the qualifications of its students and their bar passage rates were publically available.

**SETTLEMENT NEGOTIATIONS**

After nearly one and a half years of vigorous litigation, the Parties participated in a hard-fought mediation in Charlotte, North Carolina before mediator Hunter Hughes from April 19 to April 20, 2018. On April 20, 2018, the Settling Parties and plaintiffs in *Barchiesi* reached an MOU with respect to the settlement of the Consolidated Actions.

Pursuant to the MOU, the Settling Parties engaged in settlement discovery and due diligence, and analyzed the legal and factual issues relevant to settlement. Among other things, the Settling Parties have conducted and completed fact discovery in support of settlement, including numerous written discovery requests directed to Defendants, with respect to, among other issues, Defendants' ability to pay a judgment, and engaged in extensive further arms-length negotiations. Those negotiations resulted in the Settlement Agreement.

The *Barchiesi* Plaintiffs chose to end their participation in this Settlement. Thus, they are not included in the defined terms Settling Plaintiffs, Representative Plaintiffs, or Settling Parties. Nevertheless, the Settlement encompasses all putative Class Members in the Consolidated Actions because the *Krebs* and *Levy* classes completely subsume the *Barchiesi* class.[5]

**SUMMARY OF PROPOSED CLASS SETTLEMENT**

The terms of the proposed settlement ("Settlement") are set forth in their entirety in the Settlement Agreement. The important terms and features are summarized below:

*First*, the proposed Settlement is predicated on certification of the settlement class under Rule 23(b)(1)(B) as a limited fund, non-opt out settlement. The settlement class is defined as any person who enrolled in, attended, or paid tuition or fees to CSL between September 1, 2013 through and including August 15, 2017 ("Settlement Class").[6] As more fully set forth below, given that CSL has closed, insurance funds are dwindling, and the very limited assets of CSL, its parent, InfiLaw Corporation, and grandparent, Holding, there are limited funds available to satisfy any judgment. Moreover, given the pendency, at present, of approximately 90 State Cases asserting claims similar to those in the Consolidated Complaint, a non-opt out class is the only way to ensure complete resolution and a fair distribution of the available proceeds to the Class.

*Second*, the Settlement provides for the creation of a $2,650,000 Settlement Fund, comprised of $2,500,000 (all the remaining insurance funds) and a $150,000 additional contribution ("Additional Contribution") from the Defendants. The Settlement does not preclude the Class Members from pursuing relief under the Department of Education's Closed School

---

[5] *Barchiesi* defines its class as "any CSL student who paid tuition and/or fees to Defendants to attend CSL" or "any CSL student who attended CSL" for the Summer and Fall 2016 semesters. Compl. ¶¶ 189-92. *Krebs* and *Levy* define their class as "any person enrolled at CSL at any time from September 1, 2014 through its closing on August 15, 2017." *Id.*, ¶ 193.

[6] Excluded from the Class are Defendants' counsel, officers, and directors and this Court.

Discharge or Borrower Defense to Repayment programs, which provide for government discharge of student loans under certain circumstances. The Settlement also provides for 100% of any settlement payment or final money judgment (that is no longer subject to review, appeal, or rehearing) in favor of any of the Defendants in certain pending cases against the ABA, net of certain costs and expenses.[7]

*Third*, a Claims Administrator will administer the notice and claims process, and ultimately will approve or deny the claims submitted by Class Members. The Claims Administrator will distribute the entirety of the Settlement Fund, after payment of court-approved attorneys' fees and costs, incentive payments to Class Representatives and Leah Ash, and the costs and expenses of the Claims Administrator, to the Class Members based upon various criteria reflecting the strength of their claims and the magnitude of their alleged damages.

*Fourth*, Defendants have agreed not to oppose the following from the Settlement Fund: (i) incentive payments to the Representative Plaintiffs and Leah Ash of up to $500; and (ii) attorneys' fees not to exceed 15% of the Settlement Fund and reasonable costs.

*Fifth*, the Settlement provides for a general release and associated covenant not to sue by the Class Members with respect to the Defendants and related parties.

---

[7] *See Charlotte Sch. of Law LLC, et al. v. Am. Bar Ass'n et al.*, No. 3:18-cv-00256 (W.D.N.C.), *Ariz. Summit Law Sch., LLC, et al. v. Am. Bar Ass'n et al.*, No. 2:18-cv-01580-DGC (D. Ariz.), or *Fla. Coastal Sch. of Law, Inc., et al. v. Am. Bar Ass'n et al.*, No. 3:18-cv-00621-BJD-JBT-320 (M.D. Fla.) (collectively, the "ABA Litigation"). The funds recovered from the ABA Litigation, if any, available to distribute to the Class are net of: (a) the outstanding debts and liabilities of Holding, InfiLaw Corporation, and CSL as reflected in the financial statements current as of the date an ABA Litigation payment is received; (b) any costs, expenses, attorneys' fees, settlement payments owed, or final money judgments, in any then-pending litigation or government investigation, owed or incurred as of the date an ABA Litigation Payment is received, including, without limitation, costs incurred with respect to financing the ABA Litigation; and (c) $6.5 million, reflecting a good faith estimate of the potential liabilities to the United States Department of Education for Closed School Discharge claims for CSL.

## ARGUMENT

### I. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

#### A. Legal Standard.

Approval of a class settlement is a two-step process. Under Rule 23, the Court first makes an initial determination of *prima facie* fairness at a preliminary approval hearing and authorizes the parties to provide notice of the settlement to class members. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). Then, after notice to the class, the Court conducts a final fairness hearing. *See id.* This Motion concerns only the first step.

"Preliminary approval of a class action settlement 'is *at most* a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *In re Outer Banks Power Outage Litig.*, 2018 WL 2050141, at *3 (E.D.N.C. 2018) (emphasis added) (citation omitted). The Court will grant preliminary approval of the settlement where: (1) the proposed settlement is *within the range of what might ultimately be found* fair, reasonable, and adequate, and thus warrants notice and scheduling of a hearing to consider final settlement approval; and (2) the proposed notice and notice plan will provide the notice required by Rule 23 and the Due Process Clause. *See, e.g.*, *Horton,* 855 F. Supp. at 827; *Manual for Complex Litigation* (Fourth ed. 2004) §§ 21.632, 21.633. The Court should preliminarily approve the Settlement because the parties here satisfy this standard.

#### B. The Proposed Settlement Is Within the Range of What Might Ultimately Be Found Fair and Adequate.

The Fourth Circuit "applies a two-part test to determine whether a proposed settlement conforms to the requirements of" Rule 23(e) "by considering (1) fairness, which focuses on whether the proposed settlement was negotiated at arm's length; and (2) adequacy, which focuses

on whether the consideration provided to the class members is sufficient." *McLaurin v. Prestage Foods, Inc.*, 2011 WL 13146422, at *3 (E.D.N.C. 2011.) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)); *US Airline Pilots Ass'n v. Velez*, 2016 WL 4698540, at *3 (W.D.N.C. 2016), *appeal dismissed*, 2016 WL 9724881 (4th Cir. 2016) (same).

### 1. **The Proposed Settlement Is Fair.**

In analyzing whether a settlement is fair, the Fourth Circuit considers: (1) the posture of the case at the time of the settlement; (2) the extent of discovery that has been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel. *See In re Jiffy Lube*, 927 F.2d at 158-59; *McLaurin*, 2011 WL 13146422, at *3.

*First*, with respect to the posture of the case, courts consider when the settlement occurred on the litigation timeline and are suspicious of the parties' motives if the settlement occurs very early in the process. That concern is significantly reduced (if not eliminated) when, as here, the settlement occurs after a year and one-half of hard-fought litigation, with significant motion practice and written discovery assisting the parties in developing their negotiation positions. *See In re Jiffy Lube*, 927 F.2d at 158-59.

*Second*, with respect to discovery, in this case, prior to the settlement, the Parties conducted exhaustive discovery and briefed and argued numerous substantive motions, including the following:

- ➢ The Parties exchanged six sets of interrogatories, requests for production of documents, and requests for admission, totaling over 40 interrogatories, over 150 requests for production of documents, and 6 requests for admission.
- ➢ Plaintiffs received and analyzed over 78,500 documents produced by Defendants.
- ➢ The Parties litigated: (1) three separate motions to dismiss for failure to state a claim in *Barchiesi*, *Krebs*, and *Levy*; (2) two separate motions to dismiss for failure to state a claim in the Consolidated Complaint; (3) motion to dismiss Lively and Holding for lack of personal jurisdiction in *Krebs*; (4) motion to consolidate

discovery in *Barchiesi*, *Krebs*, *Levy*, and *Ash*; (5) motion for entry of protective order; and (6) motion for leave to amend answers.

*Third*, with respect to the circumstances surrounding the negotiations, the initial two-day mediation negotiations included an experienced class action mediator ensuring that arms-length bargaining occurred. Following the entry of the MOU, the mediator continued to assist the parties in reaching settlement.

*Fourth*, with respect to the experience of counsel, the undersigned counsel for Settling Plaintiffs have submitted declarations in support of the preliminary approval of this settlement. As is evident from those declarations, Class Counsel have extensive years of experience, including significant experience in class action litigation. *See* Declaration of Anthony Majestro dated September 11, 2018 ("Majestro Decl.") ¶¶ 3-4 (submitted as Ex. 2); Declaration of Philip Bohrer dated September 11, 2018 ("Bohrer Declaration"), ¶¶ 3, 5-6 (submitted as Ex. 3). They have engaged in extensive factual investigation, written discovery, and legal analysis. Majestro Decl. ¶¶ 6, 8; Bohrer Decl. ¶¶ 7, 9. In their view, the proposed settlement is fair and reasonable based upon their consideration of: (1) the relevant facts and applicable law; (2) the risks and uncertainties inherent in any litigation; (3) the anticipated duration, burden, and expense of additional litigation; (4) the terms and benefits of the proposed settlement; and (5) Defendants' limited financial resources. Majestro Decl. ¶¶ 14, 17; Bohrer Decl. ¶¶ 15, 18. The Settling Parties have reached agreement on a suitable settlement after protracted and hard-fought litigation, and after each side has had the opportunity to understand and investigate the arguments of the other.

**2. <u>The Proposed Settlement Is Adequate.</u>**

Adequacy is determined by weighing the terms of settlement in light of the following factors: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial;

(3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *In re Jiffy Lube*, 927 F.2d at 159; *see also Horton*, 855 F. Supp. at 828.

Here, given the applicable Rule 23(b)(1)(B) limited fund class certification, the predominate issue is the fourth factor, the solvency of the defendants and the likelihood of recovery on a litigated judgment. That issue is addressed extensively below. Any recovery over and above the Settlement Fund of $2,650,000 is wholly unrealistic given CSL's closing and the dire financial situation of the Defendants detailed *infra* Section II(C).

However, the remaining factors also support settlement. *First*, the relative strength of the Plaintiffs' case and their ability to prevail on the merits in litigation, like all contested matters, is subject to numerous risks. The Court might decline to certify a class for litigation purposes, or Plaintiffs might not be able to establish Defendants' liability. The Settlement, in contrast, makes assured and certain benefits available to each Class Member. The level of proof required to obtain this compensation is *de minimis*, and much lower than would be required if these claims were litigated to conclusion.

*Second*, Plaintiffs' difficulties of proof include proving any liability in light of the fact that CSL remained accredited during the class period and the necessity of overcoming the defense that Plaintiffs' claims in reality constitute educational malpractice, a claim North Carolina does not recognize. Further, many, if not all, Plaintiffs may have difficulty establishing the element of reasonable reliance in their fraud claims. Many of the facts underlying CSL's alleged misrepresentation of its compliance with the ABA Standards regarding admittance of qualified students were available to Plaintiffs. Indeed, the relevant statistics of each incoming CSL class, such as undergraduate grade point average and LSAT scores, were publicly available. Finally,

Plaintiffs may have difficulty establishing any damages for many members of the Class, such as those that successfully transferred their credits or who graduated from CSL.

*Third*, regarding the anticipated duration, burden, and expense of additional litigation, although the Parties have engaged in substantial discovery, much is left to be done. All the Representative Plaintiffs have yet to be deposed, some CSL officers and employees with relevant knowledge have likewise not yet been deposed, and experts need to be retained and deposed.

*Fourth*, the Settlement has the full support of Class Counsel, comprising six separate law firms. Each has conducted extensive due diligence, assessed the situation, and approved the Settlement.

In sum, the above factors, particularly the Defendants' limited financial resources, weighs heavily in favor of a finding that the proposed compromise is adequate. The benefits of the Settlement exceed the cost of continued and protracted litigation, the Settlement avoids the potential risks and expenses of a trial, and the Settlement assures a fair distribution of the available funds. The terms of the Settlement are fair, and the compensation afforded under the Settlement Agreement correlates adequately with the damages and losses claimed by Plaintiffs.

### C. The Proposed Notice Is Reasonable.

The notice and notice plan contained in the Settlement Agreement satisfy Rule 23(e) and due process. *See* Declaration of Shannon R. Wheatman dated September 11, 2018 ("Wheatman Decl."), ¶¶ 30-34 (submitted as Ex. 4). Under Rule 23(e), the "court must direct notice in a reasonable manner to all class members who would be bound by [a proposed settlement]." Fed. R. Civ. P. 23(e)(1). Due process requires that notice to class members be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339

U.S. 306, 314 (1950); *see also In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 231, 236 (S.D.W. Va. 2005) (due process satisfied where notice reached approximately 80% of class); *In re Mid-Atl. Toyota Antitrust Litig.*, 585 F. Supp. 1553, 1561 (D. Md. 1984) (due process satisfied where notice was given by "first class mailing followed by notice by publication" since the "identity of" class members was "available from defendants' records").[8]

The Notice of Proposed Class Action Settlement and Fairness Hearing (hereinafter "Long Form Notice") is attached to the Settlement Agreement as Exhibit B. Though it condenses the terms of the proposed Settlement, it covers all relevant topics: the history of the litigation; the substantive terms of the proposed Settlement; the class definition; the effect of the proposed Settlement and release of claims; and the method to challenge the Settlement. The Notice is written in plain, easy-to-understand English. It fully satisfies Rule 23(e)(1)'s requirement that notice be "reasonable."

The proposed notice plan is described in Section 5.1 of the Settlement Agreement, and it involves four different avenues of notice to the Settlement Class:

- ➢ The Claims Administrator will establish a website that will include the Long Form Notice attached to the Settlement Agreement as Exhibit B and the Settlement Agreement (including the Claim Form).
- ➢ The Claims Administrator will send a postcard containing the U.S. Mail Notice, attached to the Settlement Agreement as Exhibit C, to each Class Member for whom Defendants have a facially valid U.S. Postal address.
- ➢ The Claims Administrator will send the Email Notice, attached to the Settlement Agreement as Exhibit D, to each Class Member for whom Defendants have an email address.
- ➢ The Claims Administrator will establish a toll-free number, which will receive calls relating to the Settlement and will provide automated (*i.e.*, not a live operator) information about the Settlement and ability to request the emailing or mailing of a Claim Form.

---

8 The notice provisions of Rule 23(c)(2)(B) apply only to the certification of Rule 23(b)(2) and (b)(3) classes, and are therefore inapplicable to this Rule 23(b)(1)(B) class certification.

The notice and notice plan described above: (1) constitute reasonable notice; (2) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this litigation and of their right to object to the proposed Settlement; (3) are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) meet all applicable requirements of due process and applicable law. Like *In re Mid-Atlantic Toyota*, Defendants here can easily identify all class members using student records. *See Mid-Atl. Toyota*, 585 F. Supp. at 1561. Additionally, the Claims Administrator is not just planning to mail notices, but to publish notice on a website where all Class Members can view it. *See In re Serzone*, 231 F.R.D. at 236 (mailing notice along with publishing website satisfied due process). Here, Class Members will be provided with a claim form on the settlement website and with instructions on how and when to object to the Settlement should they choose to do so.

In addition, pursuant to 28 U.S.C. § 1715, Defendants' counsel will provide all required notices to government regulators, said notice to be given within ten days of the date of the filing of the instant motion.

### D. The Class Representatives and Counsel Have Participated Actively in This Litigation.

The *Levy* and *Krebs* Plaintiffs seek to be appointed representatives for the proposed Settlement Class ("Representative Plaintiffs"). They have participated actively in this litigation, responding to written discovery, and participating in the first day of mediation. *See supra* Section I(B). The law firms of Abrams & Abrams, P.A., Bailey Javins & Carter, LC, Powell & Majestro, PLLC, Crumley Roberts, Bohrer Brady LLC, and Rawls, Scheer, Clary, & Mingo PLLC are the proposed Class Counsel for the proposed Settlement Class. *See* Settlement Agreement, § 1.7. Pursuant to Rule 23(g), the Court should appoint them to serve in that capacity.

Furthermore, the Settling Parties have agreed that Rust Consulting, Inc., should serve as the Claims Administrator. The Claims Administrator will have those responsibilities set forth in the Settlement Agreement, including acting as the notice agent. The Settling Parties therefore request that the Court appoint Rust Consulting, Inc. to serve as the Claims Administrator with the authority to disseminate notice in accordance with the Settlement Agreement and to perform all other duties described in the Settlement Agreement, including the processing and resolution of claim forms and approval of claims.

## II. THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTTLEMENT CLASS.

### A. Legal Standard.

At this stage of the proceeding, the Court "*preliminarily* considers whether the proposed settlement classes meet the requirements of" Rule 23(a) and (b) of the Federal Rules of Civil Procedure. *In re Outer Banks*, 2018 WL 2050141, at *3 (emphasis added); *see also Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, 2007 WL 4191749, at *2-3 (D.N.J. 2007) ("preliminarily" approving class certification during preliminary approval of class settlement stage).

This means that the Court need not decide if the requirements of Rule 23 are met, but rather need only make a "tentative assumption" that certification of a settlement class is appropriate. *See In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 177 (5th Cir. 1979) (quoting 3 H. Newberg, Newberg on Class Actions § 5570c at 476 (1977)) (a "temporary settlement class [is] nothing more than a tentative assumption indulged in by the court to facilitate the amicable resolution of the litigation, rather than as some sort of conditional class ruling under Rule 23 criterion").

As demonstrated below, the Court should make the preliminary determination that the Settling Plaintiffs have satisfied Rule 23's criteria.[9]

**B. The Proposed Class Meets the Requirements Under Rule 23(a).**

Rule 23(a) contains four prerequisites to certification of a class: numerosity, commonality, typicality, and adequacy of representation.

**Numerosity.** To meet the numerosity requirement, there must be a large enough group of plaintiffs to make joinder of all class members impracticable. *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993) (class of 480 members "would easily satisfy numerosity requirement"); *see also In re Outer Banks*, 2018 WL 2050141, at *4 (class consisting of between 1,775 and 2,800 properties and businesses satisfied numerosity requirement). Here, the Class consists of approximately 2,500 persons who enrolled in, attended, or paid tuition or fees to CSL between September 1, 2013 and August 15, 2017. *See* Declaration of Scott Thompson dated September 11, 2018 ("Thompson Decl."), ¶¶ 4, 6 (submitted as Ex. 5). Consequently, the Settling Parties' proposed Settlement Class easily satisfies the numerosity requirement.

**Commonality and Typicality.** "[T]he requirements for typicality and commonality often merge." *In re Outer Banks*, 2018 WL 2050141, at *4 (citation omitted); *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 1346125, at *9 (W.D.N.C. 2015). The question of commonality asks whether the class members' claims "depend upon a common contention," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A

---

[9] As provided in the Settlement Agreement Sections 2.4 and 2.5, nothing in the Settlement Agreement or any document referred to therein "nor any action taken to implement this Settlement Agreement is, may be construed as, may be used as, or offered or received into evidence as an admission, concession, or presumption by or against" either Settling Plaintiffs or Defendants of "any issue relating to class certification" should the case not settle.

common question is one "that can be resolved for each class member in a single hearing." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006). There must be "at least one common question of law or fact . . . among class members." *Speaks v. U.S. Tobacco Coop., Inc.*, 324 F.R.D. 112, 136 (E.D.N.C. 2018). Similarly, typicality requires the claims of the Class Representatives to "arise[] from the same course of conduct that gives rise to the claims of the class members" and be "based on the same legal theories." *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 637 (D.S.C. 1992).

Here, the Settling Plaintiffs satisfy the commonality and typicality requirements. As the Court recognized, there are many common questions of fact and law among Class Members and the claims "are closely related and all arise from the same core factual allegations." *Barchiesi*, DE 61, p. 2 ("All of the actions share substantially overlapping parties, facts, claims and legal issues."). "Plaintiffs' pleadings demonstrate that they primarily base all their claims in the Actions on allegations that Defendants allegedly misrepresented CSL's ABA accreditation and bar passage rates, and concealed its accreditation status from CSL students." *Id.*, p.1. These common questions, applicable to all the class members, resonate throughout the Consolidated Complaint. *See* Compl. ¶¶ 1, 2, 52, 63, 70, 78. Moreover, Settling Plaintiffs allege that their injuries result from these same facts. *See id.*, ¶¶ 220, 246, 253.

**Adequacy.** Rule 23(a)(4) requires that class representatives are capable of fairly and adequately representing the interests of the class. This requires Settling Plaintiffs to show that: (1) class representatives have no actual or potential conflicts of interest with the putative class and "possess the same interest and suffer the same injury as the class members"; and (2) "plaintiffs' counsel [is] 'qualified, experienced and generally able to conduct the proposed litigation.'"

*Rehberg*, 2015 WL 1346125, at *11 (citations omitted); *In re Outer Banks*, 2018 WL 2050141, at *4. Here, Settling Plaintiffs satisfy both requirements.

*First*, there is no actual or potential conflict of interest between Settling Plaintiffs and putative class members. As noted above, they allege that they suffered the same injury as the class, *i.e.*, that they were allegedly induced to enroll and pay tuition and fees to CSL based upon the Defendants purported misrepresentations and failure to disclose. *See* Compl. ¶¶ 220, 246, 253.

*Second*, the requirement of adequacy is satisfied. Settling Plaintiffs' Counsel are experienced and generally able to conduct the proposed litigation. Combined, Class Counsel have extensive experience in consumer protection and complex litigation, including particular expertise in class actions. *See* Majestro Decl. ¶¶ 3-4; Bohrer Decl. ¶¶ 3, 6.[10] Class Counsel has zealously and ably represented the interest of the Plaintiffs and the individuals they wish to represent, and if this Settlement is approved, will zealously and ably represent the interests of the Settlement Class. *See* Majestro Decl. ¶¶ 6-9, 19; Bohrer Decl. ¶¶ 7-13, 20.

### C. **The Settlement Class Satisfies the Requirements of Rule 23(b)(1)(B).**

The Settlement is a Rule 23(b)(1)(B) limited fund settlement. Limited fund settlements permit certification of a mandatory class when "prosecuting separate actions by or against individual class members of the class would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1).

[10] Because this case involves six law firms for Settling Class Plaintiffs, the lead attorneys for each set of class plaintiffs (*Krebs* and *Levy*) have submitted declarations.

The Supreme Court has interpreted this Rule to authorize the certification of such a mandatory class when there is a limited fund available to satisfy all claims against a defendant and individual actions would deplete the fund and deprive class members of recovery they would otherwise achieve through settlement. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 842 (1999); *see also Berthelot v. Am. Postal Workers Union, Local 185*, 2010 WL 4639050, at *6 (S.D. Tex. 2010) ("Rule 23(b)(1)(B) focuses on whether individual actions would prejudice other class members . . . ., *e.g.*, where individuals seek compensation from a single, common fund insufficient to settle all claims."); *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 326 (N.D. Tex. 2011) ("The basic concept of a 'limited fund' settlement is that there is a definite, limited amount of capital that is available to class members, and that such a fund is insufficient to cover all claims."). Accordingly, under Rule 23(b)(1)(B), the individual class members cannot opt out of the class because to do so would jeopardize the fair and equitable distribution of the limited fund.

The Supreme Court has identified three "presumptively necessary" characteristics to ensure that the mandatory Rule 23(b)(1)(B) settlement class device is limited to appropriate circumstances:

> (1) "[T]he totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims."
>
> (2) "[T]he whole of the inadequate fund [is] to be devoted to the overwhelming claims."
>
> (3) "[T]he claimants identified by a common theory of recovery [are] treated equitably among themselves."

*Ortiz*, 527 U.S. at 838-39, 842; *see also In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 16-17 (D.D.C. 2011) (certifying limited fund class), *as amended* (2011); *In re Silicone Gel*

*Breast Implant Prods. Liab. Litig.*, 2010 WL 11506713, at *25-26, 49 (N.D. Ala. 2010) (noting judge "properly certified" limited fund class).

Accordingly, when these characteristics are present, the Court is justified in certifying the class under Rule 23(b)(1)(B), thus binding all class members. *Ortiz*, 527 U.S. at 838. In the instant case, the submissions of the Settling Parties demonstrates that certification of the Settlement Class under Rule 23(b)(1)(B) is appropriate and necessary to protect the Class Members.

**1. <u>There Are Inadequate Funds to Pay All the Claims.</u>**

The first factor requires a determination of (i) the amount of damages in the case, and (ii) the upper limit of the fund in question, to enable the court to evaluate whether the fund is inadequate to pay all the claims. *See Ortiz,* 527 U.S. at 850. Unlike *Ortiz*, in the instant case whether the amount of losses claimed exceeds the settlement fund is known.

Here, the Class consists of individuals who enrolled in, attended, or paid tuition or fees to CSL from September 1, 2013 to and including August 15, 2017 (the date CSL closed). The individuals within the class so defined principally seek, among other damages, a refund of their tuition payments and fees. *See* Compl. ¶¶ 220, 243. To calculate the approximate total amount of such damages, one must multiply (i) the annual cost of tuition and fees times (ii) the number of students times (iii) the number of years in attendance.

CSL's tuition and fees ranged from $41,000 per year in 2013 to over $44,000 per year in 2017, for an average of $42,000. The number of students in the Settlement Class is approximately 2,500. Even assuming each class member received the average of *just one* year in tuition and fees, the Settlement Class' alleged compensatory damages exceed $105,000,000 -- before trebling and attorneys' fees, which Plaintiffs seek under UDTPA. *See* Thompson Decl. ¶ 6.

Thus, the evidence presented demonstrates that the amount of damages contemplated is a "sufficiently reliable conclusion regarding the probable total of the aggregated liquid damages." *Stott*, 277 F.R.D. at 328 (citation omitted). Accordingly, this case meets this element of a proper "limited fund" certification.

The Court must also determine whether the amount of funds available to satisfy the claims is inadequate. *Ortiz*, 527 U.S. at 838-39. The proposed settlement fund itself is $2,650,000, consisting of $2.5 million constituting the remaining insurance funds and a $150,000 contribution directly from InfiLaw Corporation, CSL's parent corporation. It is clear that this sum is inadequate to pay all claims. *See* Thompson Decl. ¶ 6.

Finally, the Court must also determine whether this proposed settlement meets the *Ortiz* requirement that the "limited fund" be "set definitively at [its] maximum[ ]." *Ortiz*, 527 U.S. at 838. To obtain approval for a "limited fund" settlement, "the settling parties must present not only their agreement, but evidence on which the district court may ascertain the limit . . . of the fund." *Id.* at 849.

Here, the Settling Parties have submitted ample evidence as to the limited nature of the two sources of the fund: the remaining insurance benefits of $2.5 million, and the $150,000 InfiLaw Corporation is to contribute. First, as to the insurance proceeds, only $2.5 million in coverage remains. Thompson Decl. ¶ 12. There is no dispute as to this sum.

Second, with respect to the $150,000 to be contributed by InfiLaw Corporation, the Parties have likewise established that this amount is set at its maximum. "[T]he fact that [a settling company] will maintain limited assets to continue operations does not preclude the Court from approving this settlement. Indeed, courts have approved 'limited fund' settlements that do not encompass a company's entire net worth." *Stott*, 277 F.R.D. at 331; *see also Williams v. Nat. Sec.*

*Ins. Co.*, 237 F.R.D. 685, 692 (M.D. Ala. 2006) (approving Rule 23(b)(1)(B) settlement where proposed settlement "reduces [defendant's] surplus [of funds] by approximately 35%").

The Settling Parties have submitted the financial statements of the two corporate defendants, CSL and InfiLaw Corporation, and the ultimate parent corporation, former defendant Holding, along with a declaration from Scott Thompson, the Chief Financial Officer of CSL, InfiLaw Corporation, and Holding. These documents reveal the following:

- **CSL.** CSL, which closed in 2017, incurred a Net Loss from Operations of over $8 million that year, and has no unencumbered assets. *See* Thompson Decl. ¶ 15; CSL 2017 Income Statement (*id.*, Ex. 4); CSL 2017 Balance Sheet (*id.*, Ex. 3).
- **InfiLaw Corporation.** The consolidated financial statements for InfiLaw Corporation, CSL's parent, fare no better. Those statements reveal that InfiLaw Corporation lost (before taxes) over $7 million in 2017 and over $6 million through June 2018. *See id.*, ¶ 16*;* InfiLaw Corporation 2017 and 2018 Income Statements (*id.*, Exs. 8 & 10). Similarly, InfiLaw Corporation's balance sheet reflects minimal unencumbered assets that are barely sufficient to permit continued operations (*id.*, ¶ 16 & Exs. 7 & 9).
- **Holding.** Holding (InfiLaw Corporation's parent) lost over $9 million (before taxes) in 2017 and likewise has minimal unencumbered assets. *See id.*, ¶ 17.

Moreover, CSL has numerous other pending contingent obligations that likewise establish that the Settlement Fund is set as its maximum. For example, CSL's landlord has sued CSL and InfiLaw Corporation seeking $43 million in damages, and has obtained a judgment of liability with only damages remaining to be determined. *See id.*, ¶¶ 20-22. In addition, there are two pending qui tam cases against CSL and InfiLaw Corporation (and others) that together seek more than $100 million in damages.[11] *See id.*, ¶ 24. For these reasons, the first requirement for approval of a Rule 23(b)(1)(B) is satisfied.

---

[11] *U.S. ex rel. Bernier v. InfiLaw Corp.*, Case No. 6:16-cv-00970-RBD-TBS (M.D. Fla. 2016); *Lorona v. Ariz. Summit Law Sch. et al.*, Case No. 2:15-cv-00972-NVW (D. Ariz.).

Finally, as previously noted, Defendant InfiLaw Corporation and its three law schools have engaged in the pro-active ABA Litigation. InfiLaw Corporation is challenging the ABA's decision to place its three law schools (CSL, Florida Coastal School of Law, and Arizona Summit Law School) on probation. *Id.* ¶ 27. As a result of the ABA's decisions, CSL ceased operations on August 15, 2017, and Arizona Summit is no longer offering classes. Defendants believe this litigation is necessary for the ongoing operation of the remaining InfiLaw Corporation law schools. *See id.* Defendants have agreed to include 100% of the net proceeds of any judgment or settlement payment from that Litigation in the Settlement Fund. *See supra*, p. 7.

**2. <u>Fund Wholly Devoted to Claims.</u>**

The second necessary component for a limited fund settlement requires that the settlement fund at issue be wholly "devoted to the overwhelming claims." *Ortiz*, 527 U.S. at 839. Here, there is no dispute that the entire settlement fund, minus attorneys' fees and costs, is to be used to compensate Class Members. *See* Settlement Agreement § 10.2; Thompson Decl. ¶ 31.

**3. <u>Equitable Treatment.</u>**

The third and final necessary element of Rule 23(b)(1)(B) limited fund certification is that "the claimants identified by a common theory of recovery [are] treated equitably among themselves." *Ortiz*, 527 U.S. at 839. Primary equity considerations are the inclusiveness of the class and the fairness of distributions to those within it. *See id.* at 854.

As to the inclusiveness of the class, the Settlement Class includes all individuals who enrolled in, attended, or paid tuition or fees to CSL from September 1, 2013 through August 15, 2017. This period includes the proposed class definitions for all existing claims in the Consolidated Actions, as well as all the individual State Plaintiffs.[12]

[12] Defendants and their affiliates and employees are excluded from the Class. These types of exclusions are a common litigation practice necessary to avoid conflicts of interest among class

As to the fairness of distributions to those within the Settlement Class, the Settling Parties have created and submitted proposed tiers and point allocations for distribution of the Settlement Fund and the justifications for the different levels based upon various criteria reflecting the strength of their claims and the magnitude of their alleged damages. *See* Settlement Agreement § 10.2. The Claims Administrator is to distribute the Settlement Fund to the Class Members proportionate to the point allocations. *See id.* The factors informing the point allocations and their rationale include:

- Whether the Class Member is eligible for Title IV loan forgiveness under the Department of Education's Closed School Discharge program, which eligibility commenced for students in attendance on or after December 31, 2016. If so, the Class Member is eligible to be compensated by the Department for the tuition and fees that he or she paid to CSL. *See* Settlement Agreement, § 10.2.

- Whether the Class Member transferred after the disclosure of the ABA probation decision on November 15, 2016, and, if so, the number of CSL credits the transferee institution accepted. The ability of a Class Member to transfer and the degree to which the transferee institution accepted some or all of the CSL credits affects the value that the Class Member received from the tuition and fees he or she paid to CSL. *See id.*

- Whether the Class Member graduated from CSL, thus obtaining the degree for which he or she paid. *See id.*

- Whether the Class Member transferred, withdrew, or graduated from CSL prior to the disclosure of ABA probation on November 15, 2016, so that the ABA probation decision on that date could not have affected their decision to leave CSL. *See id.*

Thus, these proposed tiers and point allocations are fair, reasonable, and make appropriate allowance for the differences in the strength of the individual claims for damages.

For the above reasons, preliminary certification of the Settlement Class pursuant to Rule 23(b)(1)(B) is fair, reasonable, and appropriate, and the Settlement satisfies the *Ortiz* requirements.

---

members that would otherwise preclude certification. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 128-29 (5th Cir. 2005) (affirming certification of a class with comparable exclusions).

## CONCLUSION

Wherefore, the Settling Parties respectfully request that the Court:

- preliminarily certify the Settlement Class as a Rule 23(b)(1)(B) class and preliminarily approve the class action settlement;
- direct that the notice plan contained in the Settlement Agreement be effectuated;
- approve the appointment of (i) Abrams & Abrams, P.A., Bailey Javins & Carter, LC, Powell & Majestro, PLLC, Crumley Roberts, Bohrer Brady LLC, and Rawls, Scheer, Foster, Mingo & Culp, PLLC as Class Counsel and (ii) Representative Plaintiffs as class representatives;
- approve the appointment of the Claims Administrator as identified to carry out all of the functions set forth herein and in the Settlement Agreement;
- set a date for the fairness hearing not later than 75 days after Notice is mailed to Class Members; and
- enter the Order Preliminarily Certifying Settlement Class and Preliminarily Approving Class Action Settlement in the form attached to the Settlement Agreement as Exhibit A.

This the 11th day of September, 2018.

Respectfully submitted,

**For the Krebs Plaintiffs**

*/s Anthony J. Majestro*
Anthony J. Majestro
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Tel: (304) 346-2889
amajestro@powellmajestro.com

Douglas B. Abrams
Noah B. Abrams
Abrams & Abrams, P.A.
1526 Glenwood Avenue
Raleigh, NC 27608
Tel: (919) 755-9166
dabrams@abramslawfirm.com
nabrams@abramslawfirm.com

Timothy C. Bailey
Taylor M. Norman
Bailey Javins & Carter, LC

213 Hale Street
Charleston, WV 25301
Tel: (304) 244-1984
tbailey@bjc4u.com
tnorman@bjc4u.com

**For the Levy Plaintiffs**

*/s Philip Bohrer*
Philip Bohrer
Scott E. Brady
Bohrer Brady LLC
8712 Jefferson Highway, Suite B
Baton Rouge, LA 70809
Tel: (225) 925-5297
phil@bohrerbrady.com
scott@bohrerbrady.com

Brian Leighton Kinsley
Daniel Ray Francis
Crumley Roberts
2400 Freeman Mill Road, Ste. 200
Greensboro, NC 27406
Tel: (336) 728-6219
blkinsley@crumleyroberts.com
drfrancis@crumleyroberts.com

Robert Andre Fleury, Jr
Crumley Roberts
817 E. Morehead St., Suite 100
Charlotte, NC 28207
Tel: (704) 343-6687
rafleury@crumleyroberts.com

Amanda A. Mingo
Rawls, Scheer, Clary & Mingo, PLLC
1011 E. Morehead Street, Suite 300
Charlotte, NC 28204
Tel: (704) 376-3200
amingo@rsfmlaw.com

**For Plaintiff Ash**

*/s Michael J. Messinger*
Michael John Messinger
Law Offices of Michael Messinger, PLLC

6135 Park South Dr.
Suite 510
Charlotte, NC 28210
Tel:  (704) 609-4277
MichaelMessingerLaw@gmail.com

**For Defendants**

/*s David E. Mills*

David E. Mills (admitted *pro hac vice*)
Michael D. Hays (admitted *pro hac vice*)
Cooley LLP
1299 Pennsylvania Ave., NW, Suite 700
Washington, D.C. 20004
Tel: (202) 842-7800
dmills@cooley.com
mhays@cooley.com

Robert T. Cahill (admitted *pro hac vice*)
Cooley LLP
11951 Freedom Drive, 14th Fl.
Reston, Virginia 20190
Tel: (703) 456-8000
rcahill@cooley.com

Sarah M. Stone, NCSB No. 34117
Debbie W. Harden, NCSB No. 10576
Womble Bond Dickinson (US) LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, North Carolina 28202
Tel: (704) 331-4943
Debbie.Harden@wbd-us.com
Sarah.Stone@wbd-us.com

Johnny M. Loper, NCSB No. 15533
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
P.O. Box 831
Raleigh, North Carolina 27601
Tel: (919) 755-2116
Johnny.Loper@wbd-us.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of September, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

H. Forest Horne, Jr.
John Alan Jones
Karl Joseph Amelchenko
Steven Dennis Corriveau
Martin & Jones, PLLC
410 Glenwood Avenue, Suite 200
Raleigh, NC 27603
hfh@m-j.com, jaj@m-j.com, kja@m-j.com, sdc@m-j.com
*Attorneys for Barchiesi Plaintiffs*

Gary K. Shipman
Kyle Joseph Nutt
Angelique Adams
Shipman & Wright, LLP
575 Military Cutoff Road, Suite 106
Wilmington, NC 28405
gshipman@shipmanlaw.com,
knutt@shipmanlaw.com,
aadams@shipmanlaw.com
*Attorneys for Barchiesi Plaintiffs*

*/s Anthony J. Majestro*
Anthony J. Majestro
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Tel: (304) 346-2889
amajestro@powellmajestro.com

*Counsel for Krebs Plaintiffs*